# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| JACOB D. SMITH, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:16-CV-492-JEM |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of | ) | |
| the Social Security Administration, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff on November 23, 2016, and Plaintiff's Opening Brief [DE 14], filed by Plaintiff on March 29, 2017. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On July 10, 2017, the Commissioner filed a response, and Plaintiff replied on July 24, 2017. For the following reasons, the Court grants Plaintiff's request for remand.

**I.**     **Background**

In May 2013, Plaintiff filed an application for benefits alleging that he became disabled on December 30, 2008. Plaintiff's application was denied initially and upon reconsideration. On April 26, 2015, Administrative Law Judge ("ALJ") Jason C. Earnhart held a hearing at which Plaintiff, with an attorney, Plaintiff's grandmother, and a vocational expert ("VE") testified. On April 13, 2015, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.     The claimant had not yet attained age 22 as of December 30, 2008, the alleged onset date.

2.     The claimant met the insured status requirements of the Social Security Act through March 31, 2010.

3. The claimant has not engaged in substantial gainful activity since December 30, 2008, the alleged onset date.

4. Prior to attaining age 22, and continuing through the date of this decision, the claimant has the following severe impairments: spinal disorder, obesity, and multiple mental health impairments, including depressive disorder, bipolar disorder, anxiety disorder, ADHD, and schizoaffective disorder.

5. Prior to attaining age 22, and continuing through the date of the decision, the claimant did not have an impairment or combination of impairments that met or medically equalled any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

6. The claimant has the residual functional capacity to perform medium work except that he is limited to simple, routine, and repetitive tasks with no fast production pace work or tandem tasks; the claimant is never able to interact with the public and he is limited to no more than occasional interaction with supervisors and coworkers.

7. The claimant has no past relevant work.

8. The claimant was 20 years old, defined as a younger individual age 18-49, on the alleged disability onset date.

9. The claimant has at least a high school education and is able to communicate in English.

10. Transferability of job skills is not an issue because the claimant does not have past relevant work.

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could perform.

12. The claimant has not been under a disability, as defined in the Social Security Act, at any time prior to the date he attained age 22, or from December 30, 2008, through the date of the ALJ's decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate

Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.     Standard of Review

The Social Security Act authorizes judicial review of the final decision of the Agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may

3

reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**III. Analysis**

Plaintiff argues that the ALJ erred in failing to find that Plaintiff met Listing 12.04 for affective disorders. The Commissioner argues that the ALJ's opinion is supported by substantial evidence.

The determination of whether a claimant suffers from a listed impairment comes at steps two and three of the ALJ's analysis. Step two of the ALJ's analysis requires an examination of whether the claimant has an impairment or combination of impairments that are severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). A medically determinable impairment or combination of

4

impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c); 416.920(c). The determination of whether a claimant suffers from a severe condition that meets a listed impairment comes at step three of the sequential analysis. At step three, the ALJ must determine whether the claimant's impairments meet an impairment listed in the appendix to the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). An individual suffering from an impairment that meets the description of a listing or its equivalent is conclusively presumed to be disabled. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). In order "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that manifests only some of the criteria will not qualify, no matter its severity. *Id.*

Listing 12.04 describes affective disorders, which are "Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. As relevant in this case, there must be medically documented persistence of a particular mental health syndrome that results in at least two of the "B" criteria: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration," or the "C" criteria: "Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and . . . [r]epeated episodes of decompensation,

5

each of extended duration." *Id*. The ALJ concluded that the severity of Plaintiff's mental impairment does not meet or medically equal the criteria of Listing 12.04.

The Commissioner argues that the ALJ adequately analyzed each of the B criteria, finding Plaintiff had moderate restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties maintaining concentration, persistence, and pace, and therefore did not meet the B criteria, and reasonably concluded that Plaintiff did not meet the C criteria because he had not experienced episodes of decompensation. Plaintiff argues that in reaching those conclusions the ALJ inaccurately represented the record and impermissibly played doctor.

The ALJ concluded that Plaintiff had only moderate restrictions in activities of daily life because he could prepare meals, care for a pet, attempt household chores, and drive a car. Plaintiff argues that the ALJ mischaracterized the evidence and ignored evidence contrary to his conclusions. In particular, the ALJ conflated the Plaintiff's ability to sometimes heat food in a microwave with meal preparation, neglected to mention Plaintiff's difficulties driving, including that he crashed a car into a ditch, and ignored Plaintiff's struggles with independent living tasks, including remembering to complete basic tasks of personal hygiene. Likewise, the activities emphasized by the ALJ to indicate Plaintiff's social functioning are similarly divorced from the evidence in the Record. ALJ emphasized that Plaintiff was able to shop in stores, play video games, and reported a girlfriend, while ignoring the limitations on those activities. Plaintiff shopped only with his grandmother and structured the trips to avoid social contact. He stated that he felt the need to use drugs and/or alcohol to interact with his friends and could not go to social settings without being under the influence. The woman referred to as Plaintiff's girlfriend was someone 20 years older than he was who called him and would sometimes hang out with him, but Plaintiff did not consider them

6

to be dating or together, and he reported that "she was always upset" with how he interacted with her. AR. 71-72. Not only is the evidence relied on by the ALJ less robust than suggested, but the ALJ completely ignores other evidence in the record of Plaintiff's difficulties and limitations in areas of social functioning, including reports from agency workers indicating significant difficulties communicating. AR 311, 349. In short, it appears that the ALJ impermissibly ignored evidence in the record that countered his conclusion. *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded."); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) ("[T]he ALJ may not ignore an entire line of evidence that is contrary to the ruling.").

The ALJ also concluded that Plaintiff has had no episodes of decompensation, stating only that "the objective medical evidence does not contain evidence that the claimant has experienced any episodes of decompensation during the period in question that have been of extended duration," AR 23, without any analysis. The Listing defines "episodes of decompensation" as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.00. These episodes "may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id*. Although hospitalization is one indicia of an episode of decompensation, it can also "be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system" such as "placement in a halfway house, or a highly structured and directing household." *Id*; *see also Larson v. Astrue*, 615 F.3d 744, 750 (7th Cir. 2010)

("An incident – such as hospitalization or placement in a halfway house – that signals the need for a more structured psychological support system would qualify as an episode of decompensation, but so would many other scenarios. The listing recognizes that an episode may be inferred from medical records showing a significant alteration in medication.") (citing 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.00). Plaintiff argues that the record includes periods of increased symptoms as demonstrated by medication changes, decrease in GAF scores, and inpatient hospitalization, but the ALJ engaged in no analysis as to whether any of Plaintiff's increases in treatments and/or needs for structured psychological support symptoms were episodes of decompensation within the meaning of the listing. On remand, the ALJ is directed to thoroughly analyze whether Plaintiff's exacerbations in symptoms or signs qualify as episodes of decompensation, and is reminded that the Listing encompasses "more frequent episodes of shorter duration," as well as those of extended duration that the ALJ referred to. 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.00; *see also Larson*, 615 F.3d at 750.

The Court cannot conclude that the ALJ's analysis of the Listing was adequate. The ALJ failed to articulate his analysis to assure the Court that he properly considered the important evidence without making errors of law or basing her decisions on serious omissions. *See Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). On remand, the ALJ is directed to fully and accurately address the substantial evidence in the record to determine whether Plaintiff has demonstrated the B and C criteria to meet Listing 12.04.

Plaintiff also argues that the ALJ made several other errors in his analysis. On remand, the ALJ is reminded that "[a] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R.

8

§ 404.1527(d)(2)); *see also Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96–5p, 1996 WL 374183, at *5 (July 2, 1996)) (citing 20 C.F.R. § 416.927(e)(2)). The ALJ may not cherry-pick mental health evidence of better days in order to discount the physician opinions in the record. *See, e.g., Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition."); *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011) ("The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated."); *Larson*, 615 F.3d at 751 ("[S]ymptoms that 'wax and wane' are not inconsistent with a diagnosis of recurrent, major depression. 'A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days.'") (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)).

**IV.    Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested Plaintiff's Social Security Brief [DE 17] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 5th day of March, 2018.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc:    All counsel of record

9